UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **DANIEL LUIS WENGER** )<br>   *Plaintiff,* )<br> )<br>   v. )<br> )<br> )<br>**UNITED STATES OF AMERICA,** )<br> )<br>   *Defendant.* ) | Case No: 1:19-cv-3 |

## COMPLAINT

COMES NOW the plaintiff, Daniel Luis Wenger (hereinafter "Plaintiff") and for his Complaint against the United States of America (hereinafter "Defendant"), states as follows:

## INTRODUCTION

1. This lawsuit concerns the substandard medical care provided by agents, servants, and employees of the United States at the Fort Belvoir Community Hospital in Fort Belvoir, Virginia to Mr. Daniel Wenger on November 25, 2013 when Mr. Wenger underwent a right total hip replacement resulting in significant and permanent sciatic nerve damage and in post-operative care by failing to mitigate the damage in a timely fashion.

## JURISDICTON AND VENUE

2. Plaintiff brings this lawsuit pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2675.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346 (United States as defendant) and no exception under 28 U.S.C. § 2680 applies.

1

4. Venue is proper under 28 U.S.C. § 1391(b), on the ground that all or a substantial part of the acts giving rise to Plaintiff's claims occurred in the Eastern District of Virginia, and on the ground that the Plaintiff resides in the Eastern District of Virginia.

## PARTIES

5. Plaintiff, Mr. Daniel Wenger, is a resident of Alexandria, Virginia. He was operated on at Fort Belvoir Community Hospital located at 9300 DeWitt Loop, Fort Belvoir, Virginia, in Fairfax County, Virginia on November 25, 2013. He is the Plaintiff to this action.

6. The United States, through the actions of its employees and agents, to include Dr. William Arthur Cooper ("Dr. Cooper"), an active duty Army Major in the Medical Corps and employee of The Department of the Army who operated on the Plaintiff, is the Defendant to this action.

## FACTUAL ALLEGATIONS

7. On November 25, 2013, Plaintiff underwent a total hip arthroplasty, posterior approach performed by Orthopedic Surgeon, Dr. Cooper.

8. During a surgery of the type performed on Plaintiff the sciatic nerve is obvious and apparent, and if not, the surgeon must take necessary efforts to discover the sciatic nerve. The surgeon must take steps to ensure the sciatic nerve has adequate padding, isolation, and protection during the surgery. It is standard for a surgeon to note protection efforts of the sciatic nerve in their post-operative report.

9. The surgery on Plaintiff lasted four-hours. During the course of the surgery on Plaintiff, an acetabular cup was fitted; however, Dr. Cooper changed acetabular cups to what Dr. Cooper believed was a more appropriate size during the surgery. The time of the surgery was abnormally long even if there was a legitimate need to change the size of the acetabular cup.

10. Dr. Cooper did not provide adequate padding, isolation, and protection of the sciatic nerve during the surgery on Plaintiff. Dr. Cooper's post-operative report is silent as to the isolation of the sciatic nerve and the measures taken to protect it.

11. During the changing of acetabular cups, Dr. Cooper applied excessive pressure on a surgical instrument, causing the sciatic nerve to be stretched. The proper changing of acetabular cups during surgery does not reasonably present risk to a properly padded, isolated, and protected sciatic nerve.

12. Plaintiff began experiencing symptoms of sciatic nerve damage immediately following his surgery. In fact, and according to Dr. Cooper and multiple other medical specialists, Plaintiff's sciatic nerve damage is permanent and severe. Plaintiff will suffer from this injury for the rest of his life.

13. Plaintiff's sciatic nerve damage occurred during and as a result of the surgery performed by Dr. Cooper on Plaintiff on November 25, 2013.

14. Immediately after the surgery, Plaintiff began complaining about numbness of his right leg. Initially, the doctors and nurses on duty incorrectly attributed the numbness to the epidural used during the surgery.

15. The following day, Plaintiff reported numbness and tingling in his right lower extremity that had been present since yesterday and had not improved, a fact that was noted by the nurse on duty.

16. By November 27, 2013, Plaintiff had developed a right foot drop, which was specifically noted by the physical therapist. Plaintiff began compensating for the foot drop by limping on his left foot.

17. On December 3, 2013, Plaintiff saw a physical therapist. In fact, and according to the notes of the physical therapist, Plaintiff was still working through significant numbness and tingling that was present along the dorsum and lateral aspect of his foot.

18. In the event of nerve damage during an orthopedic surgery such as the one performed in this matter, a treating medical provider is reasonably expected to promptly order follow-up testing and analysis, and take additional steps which are all designed to mitigate the extent of the nerve damage in the long term. It is known in the relevant medical community that an unjustified delay in testing and medical intervention efforts substantially diminishes the ability to later mitigate the damage.

19. Approximately 100 days post-operation, Plaintiff continued to suffer from right foot neuropathy with foot drop. He saw Dr. Cooper who finally ordered a neurology consult. The neurology consult requested by Dr. Cooper determined that Plaintiff had postoperative peroneal nerve palsy and peripheral neuropathy involving the plantar surface of his foot. Dr. Cooper provided a provisional diagnosis of "right peroneal nerve palsy, peripheral neuropathy."

20. On April 22, 2014, Mr. Wenger underwent medical testing, specifically electromyography and nerve conduction study (EMG/NCS), performed by Dr. Rhonda Pridgeon, and the diagnosis of severe sciatic nerve damage was confirmed. The nerve conduction studies of his right lower extremity showed low peroneal nerve conduction velocity, prolonged distal latency, and very low amplitude. The posterior tibial nerve had borderline distal latency, amplitude at the lower limit of the normal range, and lower nerve conduction velocity.

21. There is no medically justifiable reason for Defendant to have delayed so significantly in conducting the types of testing performed by Dr. Pridgeon. In order to properly engage in medical mitigation efforts, the type of testing performed by Dr. Pridgeon was required.

22. Plaintiff is not responsible for the delay in performing the types of testing performed by Dr. Pridgeon. Plaintiff did not fail to disclose or delay in disclosing his medical complications. Plaintiff did not fail or delay to follow the orders of his treating medical professionals.

23. In fact, and according to Dr. Pridgeon, the delay in referring Plaintiff to the type of testing performed by Dr. Pridgeon substantially reduced the possibility of successful mitigation of the nerve damage.

24. On April 28, 2014, Mr. Wenger had a follow-up Neurology appointment with Dr. Madey. Dr. Madey noted that Mr. Wenger had no real improvement since his last appointment, and specifically noted his right foot drop and neuropathic pain.

25. Plaintiff was under the care of Defendant at the time of the surgery performed on November 25, 2013 and throughout the post-operative care, to include the analysis, diagnosis, and efforts to mitigate the nerve damage suffered during the relevant surgery.

26. Plaintiff's right lower extremity neuropathy due to the nerve damage has not improved.

27. Plaintiff's ambulatory abilities are, and will be, negatively impacted by the nerve damage. Plaintiff limps badly, favoring his left side. Plaintiff's limp will cause additional physical disabilities as his life continues. As Plaintiff gets older and the complications of the nerve damage compound, the use of ambulatory devices (i.e. cane), and mobility devices (i.e. wheelchair) will be necessary.

28. Plaintiff suffers daily from throbbing, burning, and numbness on the top and bottom of his right foot, despite continued use of painkillers. Plaintiff also suffers from pain caused due to

limping and difficulties ambulating. Plaintiff's pain is expected to continue for the remainder of Plaintiff's life. The pain substantially interferes with Plaintiff's regular enjoyment of normal life activities, including activities that include movement and even sedentary activities because of the persistent nature of the pain. The pain has caused a loss of consortium between Plaintiff and his wife and specifically interferes with the ability to have and enjoy intimacy.

29. Plaintiff is employed as a civilian employee of the Department of the Army, currently as an operations officer in the pay grade of GS-13. Plaintiff's medical complications from the nerve damage has interfered with his employment.

30. As a result of Plaintiff's ambulatory disability and persistent pain, he was unable to perform his duties as an auxiliary police officer for the Alexandria Police Department and was forced to resign from his position with the department after 17 years of service. Plaintiff was not directly compensated for his service as an auxiliary police officer but was given a number of benefits that had fiscal implications that he now no longer is entitled to receive.

31. Plaintiff suffers from embarrassment, humiliation, and diminishment of pride as a result of his obvious and apparent physical disabilities, especially given his prior physical agility to include past military service, service with a police department, and a generally active and spry lifestyle.

32. Plaintiff has suffered and will continue to suffer from the nerve damage caused by the November 25, 2014 surgery in a manner that impacts his enjoyment of life and ability to earn income for the remainder of his life.

33. On November 17, 2014, Plaintiff presented his claim via Standard Form (SF) 95 to the U.S. Army Claims Service demanding compensation in the amount of $1,500,000 for damages

suffered as a result of the November 25, 2013 surgery. On July 9, 2018, the Department of the Army – Tort Claims Division sent Plaintiff a final denial of his administrative claim.

34. Since November 17, 2014, Plaintiff has realized his damages are more significant than was known at the time he filed his claim to the U.S. Army Claims Service.

## CLAIM FOR RELIEF

### (Negligence)

35. Plaintiff incorporates paragraph 1 through 34 as if fully set forth herein.

36. At all relevant times, Defendant promoted Dr. Cooper as, and Dr. Cooper held himself out as, a sufficiently skilled orthopedic surgeon to capably and competently perform the surgery performed on Plaintiff on November 25, 2013 according to the standards of care of American medicine in this field.

37. Defendant, through its employees, had a duty during the medical care of Plaintiff to use such skill, prudence, and diligence as other members of the medical community commonly possess and exercise, also known as the standard of care. Those duties included that: 1) Dr. Cooper had a duty to provide adequate padding, isolation, and protection of the sciatic nerve during the surgery on Plaintiff; 2) Dr. Cooper had a further duty to ensure that the length of the surgery did not continue for such a period of time the sciatic nerve became imperiled; 3) Dr. Cooper had a duty to not apply excessive pressure on surgical instruments during the surgery while changing the size of acetabular cups which could cause the sciatic nerve to be stretched; 4) Dr. Cooper and other employees and agents of Defendant had a duty to promptly take efforts to mitigate nerve damage that occurred during the surgery.

38. Defendant, through its employees and agents, breached their duty generally to apply the relevant medical standard of care to Plaintiff while he was under the medical care of Defendant,

which includes four specific theories: 1) that Defendant negligently failed to provide adequate padding, isolation, and protection of the sciatic nerve during the course of the surgery; 2) that Defendant negligently allowed the surgery to continue as long as it did while failing to take measures to ensure the length of the surgery did not imperial the sciatic nerve; 3) that Defendant negligently applied excessive pressure on a surgical instrument during the changing of acetabular cups which stretched the sciatic nerve; 4) that Defendant negligently failed to timely conduct medical testing and engage in mitigation efforts to reduce the long term effects of the nerve damage that occurred during the surgery. Defendant may have breached one, some, or all of the enumerated duties, which, ultimately, is a breach of the standard of care.

39. As a direct and proximate result of Defendant's breach of its duty to apply the relevant standard of care, Plaintiff has suffered damages including costs and expenses related to medical care, loss of benefits, pain and suffering, inconvenience, loss of enjoyment of life, and future damages that are not yet known.

40. The Federal Tort Claims Act (FTCA), 28 U.S.C. § 2874, provides for the liability of the United States in certain tort actions. 28 U.S.C. § 2875 provides: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. Plaintiff has fully complied with this statutory requirement.

## JURY DEMAND

41. Plaintiff demands a trial by jury on all issues so triable in this action.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in his favor and to:

A. Award Plaintiff compensatory, consequential and incidental damages in an amount to be proven at trial, but not less than $1,500,000.00;

B. Award Plaintiff his costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

C. Award pre- and post-judgment interest on any award as permitted by law;

D. Award other costs and expenses as permitted by law; and

E. Award such other relief that this Court deems just and proper.

DATED: January 2, 2019.

    Respectfully Submitted,

    By: /s/ Benjamin Aaron Beliles
    Benjamin Aaron Beliles, VSB No.: 72723
    Golden Law, Inc.
    27702 Crown Valley Pkwy, Suite D4 #414
    Ladera Ranch, CA 92694
    (949)491-1661 (Tel.)
    (949)491-1467 (Fax)
    Email: ben@goldenlawinc.com
    Attorney for Petitioner

    By: /s/ Andrew David Cherkasky
    Andrew David Cherkasky,
    CA Bar: 290501 & IL Bar: 6289219
    Golden Law, Inc.
    27702 Crown Valley Pkwy, Suite D4 #414
    Ladera Ranch, CA 92694
    (949)491-1661 (Tel.)
    (949)491-1467 (Fax)
    Email: andy@goldenlawinc.com
    Attorney for Petitioner
    *Pro Hac Vice Pending*